IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

SAMUEL VALLE-AGRONT,
        Petitioner,

vs.                                              Case No.:  5:15cv261/MMP/EMT

N. C. ENGLISH, WARDEN,
        Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on a petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2241 (ECF Nos. 1, 2). Respondent filed a response to the petition (ECF No. 8). Petitioner filed a reply (ECF No. 10).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND

Petitioner is a prisoner of the Federal Bureau of Prisons ("BOP"), housed at the federal correctional institution in Marianna, Florida (*see* ECF No. 1 at 1).  The habeas petition challenges a prison disciplinary decision Petitioner received while he was housed at the Federal Correctional Complex in Petersburg, Virginia, Incident Report #2682406 (ECF No. 1 at 3–4; ECF No. 8, Ex. 2, DHO Report for Incident Report #2682406).  Petitioner was found guilty of attempted introduction of narcotics into FCC-Petersburg, for which he received the following sanctions:  disallowance of 41 days of good conduct time, forfeiture of 41 days of "non-vested" good conduct time, placement in disciplinary segregation, and loss of visitation and telephone privileges for 18 months (ECF No. 8, Ex. 2, DHO Report). Petitioner does not dispute Respondent's description of the factual background of the disciplinary proceeding (*see* ECF No. 8 at 3–4), except that Petitioner denies he confessed to the infraction during an investigatory interview (*see* ECF No. 10 at 2).

On February 12, 2015, Petitioner was placed in administrative detention for an investigation by the Special Investigative Section ("SIS") (*see* ECF No. 2, Ex. D).  On March 13, 2015, Petitioner received notice of the disciplinary infraction in an Incident Report ("IR") written by Lieutenant B. Norman, which alleged the following:

> On March 13, 2015, the SIS completed its investigation and determined Valle-Agront, Samuel was responsible for the introduction of narcotics via the SU.S. [sic] Mail.  On February 12, 2015, SIS received credible information inmate Valle-Agront, Samuel, Reg. No. 32012-069, was involved in the introduction of narcotics (Suboxone) into the institution. Specifically, SIS staff intercepted mail addressed to inmate Valle-Agront from FCC Petersburg mail room.  The envelope contained a greeting card which had 10 orange in color strips concealed within the card.  The

orange strips tested positive for the presence of opium alkaloids (Suboxone) with the NIK test kit A.  Valle-Agront admitted to having the Suboxone sent via U.S. mail to him.  Valle-Agront stated during an interview, it was his first time introducing drugs into the facility and he got caught.

(ECF No. 8, Ex. 6, Incident Report #2682406).  The Unit Disciplinary Committee ("UDC") reviewed the IR on March 17, 2015 (*see id.*).  Petitioner told the UDC that the IR was false, and he denied that he admitted guilt to Lieutenant Norman (*see id.*). The UDC found that Petitioner committed the infraction and referred the IR to the Discipline Hearing Officer ("DHO") for further hearing (*see id.*).  The same day, March 17, 2015, Petitioner received a Notice of Discipline Hearing Before the DHO (ECF No. 8, Ex. 7, Notice of Discipline Hearing Before the DHO).  Petitioner indicated on the Notice that he did not wish to have a staff representative at the hearing (*id.*).  He also indicated that he did not wish to call witnesses (*id.*).

The disciplinary hearing was conducted by DHO W. Bennett on March 19, 2015 (ECF No. 8, Ex. 2, DHO Report).  DHO Bennett rendered a written decision on March 30, 2015 (*id.*). Hearing Officer Bennett's Report summarized Petitioner's statement as follows:

> Inmate Valle-Agront acknowledged receipt of a copy of the report and understanding his rights before the DHO.  He did not raise any issues or concerns with the discipline process to this point.
>
> Inmate Valle-Agront then made this initial statement:  "I denied attempting to get drugs into the facility.  SIS is claiming that I admit that I got that sent to me on [sic] an interview.  That is a false statement."

(ECF No. 8, Ex. 2, DHO Report).   Hearing Officer Bennett also considered the following documentary evidence:  (1) four photographs of items described in the IR, (2) a copy of an inmate request or "copout" from Petitioner to Lieutenant Norman, (3) a "copout" from Petitioner to DHO Bennett, (4) three handwritten sworn statements from Petitioner, (5) the Inmate Investigative Report of the incident (Part III of the IR), and (6) the Inmate Non-Investigative Report of the incident (Part I of the IR) (ECF No. 8, Ex. 2, DHO Report; ECF No. 8, Ex. 6, Declaration of Wilma Bennett ¶ 6).

Hearing Officer Bennett found that Petitioner committed the act as charged (ECF No. 8, Ex. 2, DHO Report).   Her Report states she relied upon the following specific evidence to support her finding:

> The DHO finds that on February 12, 2015, at 12:15 p.m., while at FCC Petersburg (Medium), you committed the prohibited act of Attempted Introduction of Any Narcotic (Code 111A).
>
> The specific evidence relied upon to support this finding was the written statement of B. Norman, Lieutenant.  Lieutenant Norman reports, "On March 13, 2015, the SIS department completed its investigation and determined Valle-Agront, Samuel was responsible for the introduction of narcotics via the US Mail.  On February 12, 2015, SIS received credible information inmate Valle-Agront, Samuel, Reg. No. 32012-069, was involved in the introduction of Narcotics (Suboxone) into the institution.  Specifically, SIS staff intercepted mail addressed to inmate Valle-Agront from FCC Petersburg mail room.  The envelope contained a greeting card which had 10 orange in color strips concealed within the card.   The orange strips tested positive for the presence of Opium Alkaloids (Suboxone) with the NIK test kit A.  Valle-Agront admitted to having the Suboxone sent via us mail to him.  Valle-Agront stated during an interview, it was his first time introducing drugs into the facility and he got caught."
>
> **NOTE:  "A delay in preparing the DHO report due to increased caseload, leave and additional duties."**

The DHO considered your statement that you did denied [sic] attempting to get drugs into the facility.  However, you admitted to the reporting officer during the SIS investigation when you stated, "It was my first time introducing drugs into the facility["] and it now appears you are changing your story.  The DHO can only conclude that you are providing a false statement to the reporting officer or to the DHO; either one detracts from your credibility in this case.  The DHO finds no evidence to support that the reporting officer would have fabricated this incident report, you also provide no evidence which would diminish the reporting staff member's observation and statement of the incident. While Lieutenant Norman has the legal obligation to provide anything other than that, the DHO viewed the accounts provided by you as attempts to downplay the seriousness of the incident and distance yourself from any wrongdoing.

Therefore, the DHO after considering all the facts and evidence at the DHO hearing has made the determination that the greater weight of evidence indicates you did commit the prohibited acts of Introduction Inmate Narcotics, Code 111A (Attempting).

(ECF No. 8, Ex. 2, DHO Report; ECF No. 8, Ex. 6, Bennett Decl. ¶ 6).

Hearing Officer Bennett imposed the following sanctions:  (1) disallowance of 41 days of good conduct time, (2) forfeiture of 41 days of non-vested good conduct time, (3) 60 days of disciplinary segregation, (4) 45 days of disciplinary segregation—"executed suspended sanctions on IR #2682406", (5) loss of visitation privileges for 18 months, and (6) loss of telephone privileges for 18 months (ECF No. 8, Ex. 2, DHO Report).  DHO Bennett explained the reasons for each sanction in her Report (*id.*).

## II.    ANALYSIS

Petitioner contends the disciplinary decision violated his due process rights (*see* ECF No. 1 at 3–4; ECF No. 2).  As Ground One, he contends there is no such offense

as 111A listed as a prohibited act in the BOP's Program Statement ("P.S.") 5270.09
(ECF No. 1 at 3; ECF No. 2 at 3).  As Ground Two, Petitioner contends the BOP
failed to conduct the 3-day, 7-day, and 30-day reviews of his placement in the SHU,
as required by P.S. 5270.10 (ECF No. 1 at 3; ECF No. 2 at 3–4; ECF No. 10 at 5).  As
Ground Three, Petitioner contends the IR was not delivered to him within 24 hours
of the incident; he did not receive UDC review within 5 days of the incident; and he
did not receive a DHO hearing until 36 days after the incident, in violation of P.S.
5270.09 (ECF No. 1 at 4; ECF No. 2 at 4–5; ECF No. 10 at 5).  As Ground Four,
Petitioner contends he did not have an opportunity to contest the evidence, because
the greeting card, envelope, contraband, or results of the drug test were not made
available to him at the UDC hearing or the DHO hearing (ECF No. 1 at 4; ECF No.
2 at 5; ECF No. 10 at 3–4).  Petitioner also contends that Lieutenant Norman's
statement that Petitioner confessed, was insufficient evidence upon which to base the
disciplinary decision, because it is "highly likely" that Lieutenant Norman
misunderstood what he said, because Petitioner's primary language is Spanish and his
use of the English language is limited (ECF No. 2 at 6; ECF No. 10 at 2, 4).  Petitioner
further contends there was no evidence corroborating Lieutenant Norman's statement
that Petitioner confessed, for example, a recording, signed statement from Petitioner,
or corroborating statement from another staff member (ECF No. 2 at 6; ECF No. 10
at 3).  Petitioner also alleges he requested a Spanish speaking SIS officer to act as an

interpreter, but his request was not honored before or during the DHO hearing (ECF No. 10 at 2–3, 5).

Respondent contends Petitioner was not denied due process under federal law (ECF No. 10 at 6–13).  Respondent argues the record establishes Petitioner received the procedural due process protections to which he was constitutionally entitled under Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), despite the fact that there may have been deviations from BOP disciplinary policy and federal regulations with regard to when Petitioner was provided copies of certain documents and when the hearing was conducted (*id.*).  Respondent further contends there was sufficient evidence to show that Petitioner committed the disciplinary infraction; therefore, substantive due process was satisfied under Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985) (*id.*).

A.   Procedural Due Process

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply.  Wolff, 418 U.S. at 563–67.  Once prison disciplinary charges are filed, the Supreme Court has outlined that due process requires:  (1) written notice of the charges be given to the inmate at least twenty-four hours before his appearance before the hearing committee, (2) a written statement by the hearing committee citing the evidence relied on and the reasons for the disciplinary action be given to the inmate, and (3) the opportunity for the inmate to call witnesses and

present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized.  *Id.*  There is no constitutional right to confront and cross-examine witnesses.  *Id.* at 567–69.

Petitioner failed to show he was denied the enumerated procedural protections required by Wolff.  The first requirement of Wolff was that Petitioner receive notice of the charge and notice of the hearing at least 24 hours prior to the hearing. Petitioner appears to argue that the notice of the charge was insufficient, because it charged him with violating Prohibited Act code 111A, but there is no such offense as 111A listed as a prohibited act in P.S. 5270.09.

The IR charged Petitioner with violating code 111 of the BOP's Prohibited Acts (*see* ECF No. 8, Ex. 6, IR).  The BOP's list of Prohibited Acts includes the following:

> 111    Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff.

(ECF No. 8, Ex. 3, P.S. 5270.09, Table 1, Prohibited Acts and Sanctions).  The DHO's Report listed the offense code as "111A" (*see* ECF No. 8, Ex. 2, DHO Report); however, the addition of the "A" simply represents that Petitioner was found guilty of an attempted violation of Prohibited Act code 111 (*see id.*).  There was no due process violation with respect to the substance of the charging document.

Additionally, there was no due process violation with respect to the timing of the notice of the charge.  Petitioner argues that the first Wolff requirement was not satisfied, because officials violated P.S. 5270.09 with regard to the timing of his

receipt of the IR (it was not received within 24 hours of the incident), the timing of the UDC hearing (it did not occur within 5 days of the incident), and the timing of the DHO hearing (it did not occur until 36 days after the incident).  Petitioner also argues he did not receive reviews of his placement in SHU in accordance with P.S. 5270.10.

A claim that the BOP violated its own policies or procedures, when those policies and procedures were not mandated by statute or the constitution, does not constitute a violation of federal law; therefore, it cannot be sustained in a habeas petition.  *See* Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011).  Program Statements are BOP policies, guidelines or interpretative rules, not substantive law. *Id.* (citing Jacks v. Crabtree, 114 F.3d 983, 985 n.1 (9th Cir. 1997); Reno v. Koray, 515 U.S. 50, 61 (1995) (characterizing BOP program statements as simply interpretive rules)); BOP Program Statement 1221.66, Chps. 1.2, 2.1 (referring to BOP program statements as "policies and procedures," not rules); Miller v. Henman, 804 F.2d 421, 426 (7th Cir. 1986); *see also* United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) (Department of Justice guidelines and policies do not create enforceable rights for criminal defendants); United States v. Craveiro, 907 F.2d 260, 264 (1st Cir. 1990) ("[T]he internal guidelines of a federal agency, that are not mandated by statute or the constitution, do not confer substantive rights on any party.").

Further, although an agency's failure to follow its own policies or non-statutory regulations may constitute a deprivation of liberty without due process, an agency's failure to comply in every respect does not in every case require the grant of relief;

instead, courts examine the specific facts to determine if the petitioner suffered substantial prejudice, that is, prejudice in the constitutional sense. *See* <u>Mullen-Cofee v. I.N.S.</u>, 976 F.2d 1375, 1380 (11th Cir. 1992) (alien's challenge to deportation decision, on ground that immigration judge failed to comply with applicable regulations, did not entitle him to relief where alien failed to demonstrate that alleged misconduct resulted in the "substantial prejudice" necessary to prevail in due process challenge to deportation proceeding); <u>Gov't of the Canal Zone v. Brooks</u>, 427 F.2d 346, 347–48 (5th Cir. 1970)[1]; <u>Turner v. Henman</u>, 829 F.2d 612, 614 (7th Cir. 1987) (habeas petitioner's challenge to United States Parole Commission's determination of petitioner's parole date, based solely on Commission's alleged failure to follow its regulations, did not entitle him to habeas relief where petitioner failed to show that the procedures used by the Commission were unconstitutional); <u>Derrickson v. St. Louis Bd. of Educ.</u>, 703 F.2d 309, 315 (8th Cir. 1983) (finding that, as a matter of law, the defendants' alleged deviations from the regulations did not amount to a constitutional deprivation); *see also, e.g.*, <u>Sharma v. Drug Enforcement Agency</u>, No. 11-10963, 2013 WL 791396, at *4 (11th Cir. Mar. 4, 2013) (unpublished) (even where a governmental entity fails to follows its own regulations providing for procedural safeguards, it is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced); <u>Mackey v. Fed. Bureau of Prisons</u>, 440 F. App'x 373

---

[1] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981.

(5th Cir. 2011) (denying habeas relief where petitioner challenged disciplinary decision of BOP but failed to establish that any of the alleged violations of federal regulations and/or BOP policy statements resulted in the required prejudice); Terry v. Fondren, No. 08-1059 (PJS/SRN), 2008 WL 5071077, at *5–6 (D. Minn. Nov. 24, 2008) (BOP's failure to comply with regulations regarding provision of incident report to inmate within 24 hours did not warrant habeas relief where inmate received adequate notice of charges against him and other due process requirements set forth in Wolff).

Here, Petitioner failed to show that the BOP staff's failure to comply with time deadlines set forth in 28 C.F.R. §§ 541.5, 541.7, and Program Statements 5270.09 and 5270.10 entitle him to federal habeas relief.  With regard to Petitioner's allegedly untimely receipt of the IR, federal regulations and BOP policy provide that an inmate "will ordinarily" receive the incident report within 24 hours of staff becoming aware of his involvement in the incident (*see* ECF No. 8, Ex. 3).  *See* 28 C.F.R. § 541.5(a); Program Statement 5270.09, Chp. 2.  Federal regulations and BOP policy also provide that the UDC will "ordinarily" review the IR within 5 working days after the IR is issued (not counting the day the IR was issued) (*see id.*).  *See* 28 C.F.R. § 541.7(c); Program Statement 5270.09, Chp. 4.  Here, Petitioner received the IR on March 13, 2015, the same day the SIS completed its investigation, but four weeks after the date of the incident and Petitioner's placement in SHU (February 12, 2015).  Petitioner received a UDC hearing 4 days later, on March 17, 2015.  Further, it is undisputed that

Petitioner received notice of the charge and notice of the DHO hearing at least 24 hours prior to the DHO hearing, which is all that is required to satisfy due process concerns.  Moreover, Petitioner has not shown that the presentation of his defense at the DHO hearing was impeded or otherwise prejudiced by the delay in the investigation and his receipt of the charge.  Therefore, Petitioner failed to demonstrate a procedural due process violation with regard to the delay in the investigation and his receipt of the IR.

Likewise, Petitioner failed to show that the failure to conduct SHU reviews in accordance with federal regulations and BOP Program Statements prejudiced his defense to the IR.  Federal regulations and BOP policy provides that the Segregation Review Official ("SRO") will (1) review the supporting records of an inmate's SHU placement within 3 working days of the inmate's placement in SHU, (2) review the inmate's status at a hearing, which the inmate may attend, within 7 days of the inmate's placement in SHU, and (3) review the inmate's status at a hearing, which the inmate may attend, after 30 days of the inmate's placement in SHU (*see* ECF No. 8, Ex. 5).  *See* 28 C.F.R. § 541.26; Program Statement 5270.10, Chp. 7.  However, Petitioner has not shown that the failure to conduct SHU reviews in accordance with federal regulations and P.S. 5270.10 prejudiced his defense to the IR.

The second Wolff requirement was satisfied, because Petitioner received a written statement by the hearing officer citing the evidence relied on and the reasons for the disciplinary action.

The third <u>Wolff</u> requirement was satisfied, because the record shows, and Petitioner does not dispute, that he had the opportunity to call witnesses, but he did not request any witnesses (*see* ECF No. 8, Ex. 2, DHO Report; ECF No. 8, Ex. 7, Notice of Discipline Hearing Before the DHO).  Additionally, Petitioner had the opportunity to present documentary evidence in his defense, and he availed himself of that opportunity, as evidenced by the fact that his documentary evidence is listed in the DHO's Report.

Petitioner contends he did not have an opportunity to contest the evidence, because the greeting card, envelope, contraband, or results of the drug test were not made available to him at the UDC hearing or the DHO hearing.  However, Petitioner was notified that this evidence existed (it was mentioned in the IR), and although the actual items were not produced at the hearing, photographs were produced (*see* ECF No. 8, Ex. 2, DHO's Report).  As previously discussed, <u>Wolff</u> does not require that an inmate have an opportunity to confront or cross-examine witnesses.  This logically extends to the personal inspection of documents and physical evidence.  Therefore, Petitioner failed to show he was denied due process in this regard.

Finally, Petitioner failed to show a due process violation with respect to the failure to provide him a Spanish speaking staff member to act as an interpreter.  In support of his assertion that he requested an interpreter both before and during the DHO hearing, Petitioner submitted a copy of an Inmate Request to Staff or "copout" he submitted to Lieutenant Norman, the officer who wrote the IR, on March 14, 2015,

the day after Petitioner received the IR (ECF No. 10, Ex. A).  Petitioner's request

stated the following:

> With all due respect, I am requesting to pull me out for us to clarify this situation in the precence [sic] of S.I.S. DelValle for his to translate our conversation.  On March 13, 2015, I recived [sic] a re-write incident report delivered to me by S.I.S. Mr. DelValle.  After reading the incident report I determinate [sic] that Leuttenant [sic] S.I.S. Mr. B. Norman have been [sic] very unprofecional [sic] writing a false statement on this last re-write indicent report, writing things (words) that I never says [sic], because I claime [sic] since the very first day that I have no knowledge of this matter and that this is the first time something like this happened to me.  I know it's become a personal matter, because Mr. B. Norman don't have [sic] the right of abuse of power just because he is a leuttennant S.I.S. to [sic] lie on a [sic] official investigation.

(ECF No. 10, Ex. A).  This evidence demonstrates only that the day after Petitioner

received the IR, he requested a meeting with the officer who wrote the IR, in the

presence of an officer who could "translate" the conversation.  There is no evidence

that Petitioner requested a translator at the DHO.  Further, the Notice of Discipline

Hearing Before the DHO, which Petitioner received and signed on March 17, 2015,

two days prior to the DHO hearing, notified Petitioner that he was entitled to have a

staff member represent him at the hearing (ECF No. 8, Ex. 7).  Petitioner indicated he

did not wish to have a staff representative at the DHO hearing (*id.*).  Additionally, the

DHO Report states that Petitioner waived his right to a staff representative, and that

he acknowledged his understanding of his rights before the DHO and did not raise any

issues or concerns with the discipline process (ECF No. 8, Ex. 2, DHO Report).

Moreover, although Petitioner states that his "primary" language is Spanish, he admits

that he uses English, albeit his use is "limited."  The court notes that Petitioner's use

of English in his request to speak with Lieutenant Norman was perfectly understandable, despite his imperfect spelling and grammar.  Additionally, Petitioner does not allege that his limited ability to communicate in English prejudiced the presentation of his defense at the DHO hearing; instead, he asserts only that it led to Lieutenant Norman's misinterpreting his statements during the investigative interview and falsely reporting that Petitioner admitted to attempting to introduce contraband into the institution.

Petitioner failed to demonstrate that he did not receive the procedural due process protections outlined in <u>Wolff</u>.  Therefore, he is not entitled to relief on his procedural due process claims.

 B. <u>Substantive Due Process</u>

In order to satisfy due process, a decision of a prison disciplinary team must be supported by "some evidence" in the record.  <u>Hill</u>, 472 U.S. at 455; <u>Young v. Jones</u>, 37 F.3d 1457 (11th Cir. 1994); <u>Inglese v. Warden, U.S. Penitentiary</u>, 687 F.2d 362, 363 (11th Cir. 1982).  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is <u>any evidence</u> in the record that could support the conclusion reached by the disciplinary board."  <u>Hill</u>, 472 U.S. at 455 (emphasis added).

Petitioner contends Lieutenant Norman's statement that he confessed was insufficient evidence upon which to base the disciplinary decision, because it is "highly likely" that Lieutenant Norman misunderstood what he said due to the

language barrier (ECF No. 2 at 6; ECF No. 10 at 2, 4).  Petitioner further contends there was no evidence corroborating Lieutenant Norman's statement that Petitioner confessed, for example, a recording, a signed statement from Petitioner, or a corroborating statement from another staff member (ECF No. 2 at 6; ECF No. 10 at 3).

As previously discussed, the hearing officer based her decision on Lieutenant Norman's statement that investigative staff intercepted mail addressed to Petitioner; that the envelope contained a greeting card which had 10 orange in color strips concealed within the card; that the orange strips tested positive for the presence of Opium Alkaloids (Suboxone) with the NIK test kit A; and that Petitioner admitted to having the Suboxone sent via us mail to him (ECF No. 8, Ex. 2, DHO Report).  The hearing officer considered Petitioner's statements and his account of his conversation with Lieutenant Norman (*id.*).  The DHO weighed Petitioner's and Lieutenant Norman's credibility, including possible motives for making the statements they made, and determined that Petitioner's denials and explanations were not credible, and were simply attempts to downplay the seriousness of the incident and distance himself from any wrongdoing (*id.*).  The photographs and Lieutenant Norman's statements in his report were alone sufficient under <u>Hill</u> to support Hearing Officer Bennett's disciplinary decision, without even considering the other evidence tying Petitioner to the violation.  *See* <u>Hill</u>, 472 U.S. at 456 (prison guard's testimony and copies of his written report supported conclusion that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause); *see also*

Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation . . ."); *see also, e.g.*, Speight v. Minor, 245 F. App'x 213, 217 (3d Cir. 2007) (unpublished but cited as persuasive authority) (disciplinary hearing record, specifically, charging officer's report, although meager, constituted some evidence supporting DHO's decision).  Therefore, Petitioner failed to demonstrate that the prison disciplinary decision violated his substantive due process rights.

III.    CONCLUSION

Petitioner failed to demonstrate he was denied due process during the disciplinary process that resulted in his conviction of Incident Report #2682406. Therefore, he is not entitled to federal habeas relief.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.     That the clerk be directed to enter judgment accordingly and close the file.

At Pensacola, Florida, this 22nd day of March 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE  JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**